IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RICHARD D. MYERS, Trustee,

        Plaintiff,

vs.

GALEN STEHLIK and STEHLIK LAW FIRM,

        Defendants.

4:22-CV-3039

MEMORANDUM AND ORDER

    This is a legal malpractice case. The defendants, Galen Stehlik and the Stehlik Law Firm, represented Kurt and Kathy Kroeger in a Chapter 12 bankruptcy proceeding. *See* filing 2 at 1; case no. BK 20-40305. The Kroegers have since filed for Chapter 7 bankruptcy, and this lawsuit was brought by Richard Myers, the bankruptcy trustee. *See* filing 2 at 1. This matter is before the Court on the defendants' motion for summary judgment. Filing 46.

## I. STANDARD OF REVIEW

    Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

### 1. BANKRUPTCY PROCEEDINGS

The Kroegers ran a family farm in Dannebrog, Nebraska. *See* filing 1 in case no. BK 20-40305. Between June 2018 and May 2019, BankFirst, a Nebraska banking corporation, issued four loans to the Kroegers. Filing 48 at 2. BankFirst secured those loans with a perfected security interest in the Kroegers' farm products, equipment, and machinery, as well as nine tracts of real property reflected in a deed of trust executed by the Kroegers in favor of BankFirst. *See* filing 48 at 2-3. The deed of trust waived the Kroegers' rights under the homestead exemption. Filing 48 at 3; *see* Neb. Rev. Stat. § 40-101.

The Kroegers defaulted on the BankFirst loans in November 2019. Filing 48 at 3. BankFirst filed a replevin action in the District Court for Howard

County, Nebraska. *See* filing 49-6. The Kroegers retained Stehlik and filed their Chapter 12 bankruptcy petition, which stayed the state court replevin action. *See* filing 48 at 4; 11 U.S.C. § 362. The Kroegers had other creditors, but BankFirst was the most significant. Filing 64 at 3.

The bankruptcy court approved a plan under which the Kroegers would pay back their creditors over time and keep their farm. *See* filing 48 at 5. To appease BankFirst, the approved plan included a "drop-dead" clause: the Kroegers were required to pay BankFirst $100,000 within ten days of the plan's adoption. *Id.* If the Kroegers failed to make the payment, BankFirst could resume its replevin action. *See id.*

The Kroegers failed to timely make the BankFirst payment. Filing 48 at 6. The Kroegers attempted to make the payment a few weeks later to prevent the replevin action, but BankFirst rejected the Kroegers' requests to negotiate and began foreclosing on the Kroegers' property. *Id.* The Kroegers retained new counsel who sought to prevent the foreclosure by moving both for a preliminary injunction and to amend the approved Chapter 12 plan. Filing 2 at 2. These efforts were unsuccessful. *See* filing 2 at 2; filing 64 at 6. The Kroegers converted the Chapter 12 bankruptcy case to one under Chapter 7 in order to liquidate their non-exempt assets. Filing 2 at 2; filing 64 at 6.

## 2. MALPRACTICE ALLEGATIONS

The plaintiff, the Chapter 7 bankruptcy trustee, brought an adversary proceeding against the defendants for alleged professional malpractice during the Chapter 12 proceedings. *See* filing 2 at 2. This Court adopted the bankruptcy court's findings and recommendation to grant the defendants' motion to withdraw the reference of the adversary proceeding to district court. Filing 2 at 4; filing 3; NEGenR 1.5(b).

3

The bankruptcy court found problems with the bankruptcy case from its inception. Bankruptcy schedules were incomplete, the initial list of creditors was incomplete, some creditors did not receive timely notice of the bankruptcy, and, according to the plaintiff, Stehlik filed documents without reviewing them with the Kroegers. Filing 2 at 1; *see also* filing 64 at 3-4. The plaintiff alleges that at the time the Kroegers filed for bankruptcy, their assets were worth more than their debts, and it was the defendants' negligence that eventually forced the Kroegers to liquidate their assets. *See* filing 64 at 2, 3.

The Kroegers filed for bankruptcy hoping "to keep as much land and equipment as they could." Filing 48 at 4. Kurt Kroeger told Stehlik that he wanted to keep all of his real property, though he was "willing to sell as much as he had in order to keep as much as possible." Filing 64 at 2. But according to the plaintiff, Stehlik never advised the Kroegers about the ability to sell some of their assets to pay down the debts. Filing 64 at 3-4. The plaintiff also alleges that Stehlik "did not do any kind of an analysis" regarding which of the Kroegers' assets could be sold. *Id.*

The plaintiff additionally asserts that Stehlik never spoke with the Kroegers about their obligations to BankFirst if the plan was approved. Filing 64 at 4. The plaintiff alleges that had the Kroegers been fully advised of their obligations under the plan, either they would have sold property to raise the necessary funds under the supervision of their retained attorney, or they would not have agreed to the drop-dead clause. The plaintiff argues the Kroegers lost more of their assets than necessary, and that Stehlik charged unreasonable fees for inadequate work.

## III. DISCUSSION

### 1. MOTIONS TO EXCLUDE

The defendants have moved to exclude certain testimony of two of the plaintiff's witnesses. Specifically, the defendants wish to prevent the plaintiff himself, Richard Myers, from providing "expert" opinions, because Myers was not identified as an expert in any disclosures under Fed. R. Civ. P. 26. *See* filing 58. And the defendants argue that the Court should exclude some opinions from the plaintiff's expert, Joseph Peiffer, which "amount to improper legal conclusions." Filing 61 at 2.

#### (a) Richard Myers

Based on the plaintiff's brief, Myers is expected to testify regarding "the dollar amount of damages suffered by the bankruptcy estate as a result of Stehlik's deficient advice to the Kroegers." Filing 68 at 3. The defendants argue that Myers was never identified as an expert pursuant to Fed. R. Civ. P. 26(a) or (e) and he "lacks the personal knowledge of any acts prior to his appointment as a trustee," so he can provide neither expert nor lay opinions about Stehlik's actions. Filing 58 at 2.

A party that fails to disclose a witness required by Rule 26(a) is not permitted to use that witness's testimony as evidence at a trial or on a motion "unless such failure is harmless" or there was "substantial justification" for the failure. *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (quoting Fed. R. Civ. P. 37(c)(1)). The plaintiff does not appear to dispute that Myers was never designated as an expert, but instead argues this failure is substantially justified and harmless. *See* filing 68 at 6. According to the plaintiff, the failure to disclose Myers as a expert is justified because the designated expert, Joseph Peiffer, did not provide damages calculations, and asking Peiffer to amend his expert report would have been too costly for the

5

estate. Filing 68 at 3. And the plaintiff argues that the failure to disclose is harmless because the defendants were able to depose Myers. *Id.*

The Court agrees that Myers was not identified as an expert witness and, despite the plaintiff's explanations, this omission was neither substantially justified nor harmless. *See* Fed. R. Civ. P. 37; *Trost*, 162 F.3d at 1008. However, even as a lay witness, Myers may give his opinion about Stehlik's actions. *See Burlington N. R.R. Co. v. State of Neb.*, 802 F.2d 994, 1004 (8th Cir. 1986) (a "lay witness' testimony in the form of opinions or inferences need only be rationally based on perception and helpful to a determination of a fact in issue"). Myers may, after foundation is laid as to his personal knowledge, perception, and industry experience, give lay opinion testimony about bankruptcy practices. *See id.*

This Court is not convinced, *at this point*, that foundation is lacking for Myers' expected opinions about the damages to the estate. As the trustee, he must have become familiar with the underlying proceedings. His opinions about what damages may have resulted from Stehlik's alleged negligence are relevant and admissible. *See Burlington N. R.R. Co.*, 802 F.2d at 1004-05; *In re Air Crash at Little Rock Ark. on June 1, 1999*, 291 F.3d 503, 515-16 (8th Cir. 2002). Whether foundation is lacking can be tested on an appropriate objection at trial, and voir dire of the witness (if necessary). The defendant's motion is denied without prejudice to reassertion.

### (b) Joseph Peiffer

The defendants have moved to exclude some of Joseph Peiffer's testimony pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Filing 59. Peiffer is a longtime bankruptcy lawyer who is expected to testify that, in his expert opinion, Stehlik's conduct fell below the professional standard of care. *See* filing 60-2. Peiffer's report offers

6

several opinions regarding the alleged breaches of Stehlik's professional duties, including, as relevant to the defendants' motion, that:

- Stehlik did not maintain signatures and documents,
- Stehlik did not ensure that the Kroegers verified petitions and accompanying papers,
- Stehlik did not comply with the rules regarding employment and compensation within bankruptcy,
- Stehlik did not file a disclosure of compensation statement, Stehlik took retained funds to pay his fees without bankruptcy court approval,
- Stehlik did not file a Chapter 12 Plan that followed bankruptcy and local rules and general orders, and
- Stehlik failed to provide advice and counsel during a Chapter 12 case.

*See* filing 60-2.

Peiffer's opinion is that these acts and omissions caused Stehlik's conduct to fall below the standard of care. Peiffer based his opinions on local bankruptcy rules, regulations, and court orders. *Id.* Peiffer is of the general opinion that the failure to follow those regulations caused Stehlik's conduct to fall below the standard of care. *See id.* The defendants' motion seeks to exclude Peiffer's opinions which offer inadmissible "legal conclusions." *See* filing 61 at 3 (citing *S. Pine Helicopters, Inc. v. Phoenix Aviation Mgrs., Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)).

When testifying to a party's negligence, experts may refer to regulations in addition to their industry experience. *See Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 295 (N.D. Ill. 2005); *S. Pine Helicopters*, 320 F.3d at 841. The defendants argue that this Court should exclude Peiffer's opinions where "his only authority or basis for the opinions is the statute or rule itself." Filing 61

7

at 3. But Peiffer's opinion is that an attorney breaches the standard of care by not adhering to the bankruptcy court's rules. *See* filing 60-2. So, Peiffer necessarily has to discuss those rules, the importance of the rules, and why, in his opinion, Stehlik failed to adhere to those rules. Peiffer is permitted to testify about the substance and importance of the local rules and regulations governing Chapter 12 bankruptcy proceedings. Peiffer may also give his opinion as to whether Stehlik acted prudently or provided the Kroegers with reasonable legal advice. *See Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 310 n.1 (8th Cir. 1997); *Balames v. Ginn*, 861 N.W.2d 684, 698 (Neb. 2015).

This isn't like *S. Pine Helicopters*, wherein the jury had to determine "whether federal law was contravened" in order to decide the plaintiff's case. *See* 320 F.3d at 841. The plaintiff in this malpractice lawsuit is not required to prove Stehlik violated bankruptcy rules. Rather, the expert's opinion about local rules and whether Stehlik followed them is relevant to the factual determination for the jury of whether Stehlik breached any duty owed to the Kroegers. Peiffer's opinion that Stehlik's conduct fell below the standard of care is both admissible and generally *required* for the jury to make such a determination. *E.g.*, *Balames*, 861 N.W.2d at 698; *Rice v. Poppe*, 881 N.W.2d 162, 169 (Neb. 2016).

Whether Stehlik's alleged failure to follow certain procedural and administrative rules actually *mattered*—that is, whether those failures constituted a breach of Stehlik's duties and/or caused any damage to the plaintiff—can be vigorously tested on cross-examination and by the defendants' own experts. But the Court will not exclude Peiffer's opinions based on Stehlik's alleged failures to follow the bankruptcy rules.

The defendants additionally argue that because Peiffer does not practice bankruptcy law in Nebraska, his opinions are not reliable and should not be admitted. *See* filing 61 at 8. Given Peiffer's experience and credentials, the

8

defendants' argument goes to the weight of the expert's testimony, not its admissibility. The defendants' motion will be denied.

## 2. SUMMARY JUDGMENT

The defendants argue that the plaintiff has not presented evidence to prove causation. Filing 47. The defendants' argument is two-fold: first, the Kroegers' own failure to make the $100,000 payment supersedes any of Stehlik's alleged negligence, and second, the plaintiff has failed to provide required expert testimony regarding the proximate cause of the alleged damages. *See* filing 47.

### (a) Failure to Make Payment

The defendants argue that the only cause of the plaintiff's alleged damages was the Kroegers' own failure to make the $100,000 payment. Filing 47 at 4. According to the defendants, this failure breaks the chain of causation between any alleged negligence by Stehlik and the plaintiff's damages because the Kroegers had access to the approved Chapter 12 plan and knew their obligations under that plan.

Whether a client's failure to read or understand a legal filing is a superseding event that breaks a chain of causation depends on the facts. *Rice,* 881 N.W.2d at 172. The facts in this case remain in dispute. The plaintiff's theory of the case is that Stehlik did not sufficiently advise the Kroegers about the drop-dead payment. The plaintiff has evidence by way of his expert: Peiffer opined that the Kroegers "did not have sufficient information to make an informed decision" about the approved bankruptcy plan. Filing 64 at 3. The plaintiff has presented sufficient evidence from which a reasonable jury could find that Stehlik either never directly told the Kroegers about the drop-dead clause or he failed to advise the Kroegers about how they could make the

9

payment. Whether Stehlik's negligence caused the Kroegers to miss the $100,000 payment is a disputed material fact for a jury to decide.

The defendants seek to collaterally estop the plaintiff from asserting that the Kroegers didn't know that they were required to make the $100,000 payment based on statements made by the bankruptcy judge during a motion hearing. *See* filing 47 at 5 n.2. But the judge's statements in a hearing do not meet the requirements for collateral estoppel. An issue sought to be precluded must have been necessary to a decision resulting in a final judgment on the merits. *See In re Zupancic,* 511 B.R. 633, 638 (Bankr. D. Neb. 2014) (citing *Stevenson v. Wright,* 733 N.W.2d 559, 565-66 (2007)); *Johnson v. Miera,* 926 F.2d 741, 743 (8th Cir. 1991). The bankruptcy judge's statement in the underlying proceeding was in reference to a motion to modify the amended plan, which was not a final judgment on the merits. *See* filing 49-15. It's also not clear that the judge's determination that the Kroegers knew about the payment was actually litigated and necessary to the decision. *See In re Zupancic,* 511 B.R. at 638. Thus, whether the Kroegers knew they had to make the drop-dead payment remains a contestable fact. *See id.*

The defendants also argue that some of the alleged breaches are not causally connected to any damages—*i.e.*, Stehlik failing to file fee applications or creating inaccurate personal property schedules. *See* filing 47 at 8. It's clear that the crux of this lawsuit is Stehlik's failure to advise the Kroegers about the drop-dead payment. *See* filing 2 at 3; filing 62 at 6. Even so, evidence of Stehlik's other breaches of his professional duties, even if not separately actionable as negligence, are relevant to a jury's potential finding that Stehlik's conduct fell below the standard of care and caused some damage to the plaintiff.

(b) Proximate Causation Burden of Proof

The defendants also argue that the plaintiff needs an expert to prove Stehlik's negligence proximately caused the plaintiff's damages. Filing 47 at 6. A legal malpractice action usually involves a "case within a case" framework, wherein the plaintiff must prove that but-for the attorney's alleged negligence, he would have been successful in the underlying case. *E.g.*, *Bowers v. Dougherty*, 615 N.W.2d 449, 457 (Neb. 2000).

The defendants primarily rely on *McVaney v. Baird, Holm, McEachen, Pedersen, Hamann & Strasheim*, 466 N.W.2d 499 (Neb. 1991). In that case, the Nebraska Supreme Court held that an expert was required to give evidence about the proximate cause of an explosion, which was the basis of the underlying negligence case. *Id.* at 507-08; *see also McWhirt v. Heavey*, 550 N.W.2d 327, 337 (Neb. 1996). The defendants argue that expert testimony is necessary here because a jury can't understand the complexities of the underlying bankruptcy proceeding.

This case is more similar to *McWhirt* than *McVaney*. In *McWhirt*, the underlying legal proceeding was a divorce. 550 N.W.2d at 337. The plaintiff, the husband, alleged his attorney's advice led him to agree to a settlement that resulted in him losing inherited property and incurring higher alimony and child support obligations. *Id.* And the Nebraska Supreme Court determined that "reasonable minds could conclude that [the plaintiff] would not have accepted the settlement proposal if it was not for [his lawyer's] alleged acts of professional negligence." *Id.*

The defendants argue that the complexities and nuances of a bankruptcy proceeding are outside a juror's common knowledge. *See* filing 70 at 3. But the plaintiff's theory of the case is simple: Stehlik's advice fell below the standard of care for a competent attorney, and the Kroegers lost more of their assets than they would have with competent advice. Questions like whether the

11

Kroegers could have made the drop-dead payment can be answered with common knowledge—a person needs to have liquid cash to pay debts. A jury can rely on common knowledge to determine whether the Kroegers were properly advised, and whether any negligent advice caused damage to their estate.

Based on the evidence when viewed most favorably to the plaintiff, reasonable minds could conclude, without expert testimony, that the Kroegers would not have accepted the bankruptcy plan, or would have timely made the drop-dead payment, if it was not for Stehlik's alleged acts of professional negligence. See *McWhirt*, 550 N.W.2d at 337.

(c) Damages

The parties also dispute what damages are recoverable in this case. In a legal malpractice lawsuit, a plaintiff can receive the fair market value of an asset lost as a result of the negligent advice of their bankruptcy attorney. *In re Sandpoint Cattle Co., LLC*, 553 B.R. 704, 748 (Bankr. D. Neb. 2016). And a plaintiff in a malpractice action may recover for excessive fees charged by an attorney. See *Young v. Govier & Milone, L.P.*, 835 N.W.2d 684, 692 (Neb. 2013).

The defendants argue that disgorgement of fees is an issue for the bankruptcy court. See filing 47 at 13-14 (citing *In re Kisseberth*, 273 F.3d 714, 719 (6th Cir. 2001)). It's true the bankruptcy court *could* decide that issue—the bankruptcy court *could also* preside over this malpractice action, if the parties consented. See filing 2. But the defendants wanted the malpractice action to go to a jury, see filing 2, so the plaintiff can pursue any damages caused by Stehlik's alleged malpractice here.

12

IV. CONCLUSION

Stehlik's alleged cavalier attitude towards the rules and regulations governing bankruptcy proceedings support the plaintiff's position that the Kroegers were inadequately advised of the ramifications of the approved bankruptcy plan—at least at this stage of the proceedings. Drawing all inferences in favor of the non-moving party, Stehlik's alleged negligence damaged the plaintiff because the Kroegers lost more of their assets than they would have with competent legal counsel. There remain significant issues of material fact which a jury must decide. Thus, the defendant's motion for summary judgment is denied at this juncture.

Accordingly,

IT IS ORDERED:

1. The defendant's motion for summary judgment (filing 46) is denied.

2. The defendants' motion to exclude all opinion testimony of Richard D. Myers (filing 55) is denied without prejudice.

3. The defendants' motion to exclude opinions of Joseph A. Peiffer (filing 59) is denied.

Dated this 2nd day of May, 2024.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Senior United States District Judge